1

2          IN THE UNITED STATES DISTRICT COURT

3              FOR THE DISTRICT OF MONTANA

4                  GREAT FALLS DIVISION

5   UNITED STATES OF AMERICA,        )
                                     )
6                    Plaintiff,       )
                                     )
7        vs.                          )    Criminal Docket
                                     )    No. CR 17-69-GF-BMM
8   DENISE L. SHARP,                  )
                                     )
9                    Defendant.       )
    _____ )
10

11                Transcript of Sentencing

12

13
            Missouri River Federal Courthouse
14              125 Central Avenue West
                 Great Falls, MT 59404
15             Thursday, April 11, 2019
                 4:38 p.m. to 5:07 p.m.
16

17

            BEFORE THE HONORABLE BRIAN MORRIS
18
            UNITED STATES DISTRICT COURT JUDGE
19

20

                 Yvette Heinze, RPR, CSR
21             United States Court Reporter
            Missouri River Federal Courthouse
22              125 Central Avenue West
                 Great Falls, MT 59404
23           yvette_heinze@mtd.uscourts.gov
                   (406) 454-7805
24
            Proceedings recorded by machine shorthand
25   Transcript produced by computer-assisted transcription

1        **APPEARANCES**

2    PRESENT ON BEHALF OF THE PLAINTIFF,
     THE UNITED STATES OF AMERICA:

3

4                    Ryan Weldon
                     Assistant U.S. Attorney
5                    OFFICE OF THE U.S. ATTORNEY
                     119 1st Avenue North, Suite 300
6                    Great Falls, Montana 59401

7

8    PRESENT ON BEHALF OF THE DEFENDANT:

9                    Paul Gallardo
                     FLAHERTY LAW OFFICE
10                   1026 First Avenue South
                     PO Box 1968
11                   Great Falls, Montana 59403

12

13

14                      -oOo-

15

16                   <u>EXHIBITS</u>

17   <u>GOVERNMENT'S</u>                                <u>ADMITTED</u>

18   Government's Exhibits 1, 2, 3, 4, and 5            5

19

20

21

22

23

24

25

PROCEEDINGS

1
2      (Open court.)
3      (Defendant present.)
4          THE COURT:  Please be seated.
5          Madam Clerk, please call the next case on the Court's
6  calendar.
7          THE CLERK:  This Court will now conduct a sentencing
8  in Cause Number CR 17-69-GF-BMM, United States of America
9  versus Denise Sharp.
10         THE COURT:  Good afternoon, Mr. Weldon.
11         MR. WELDON:  Good afternoon, Your Honor.
12         THE COURT:  Mr. Grende.
13         Good afternoon, Mr. Gallardo.
14         MR. GALLARDO:  Good afternoon, Your Honor.
15         THE COURT:  Good afternoon, Ms. Sharp.
16         Mr. Weldon, have you read the presentence
17 investigation report?
18         MR. WELDON:  Yes, I have, Your Honor.
19         THE COURT:  Do you have any objections?
20         MR. WELDON:  I do not.
21         THE COURT:  Do you recommend Ms. Sharp receive a
22 two-level reduction in her offense level to recognize her
23 acceptance of responsibility?
24         MR. WELDON:  The United States makes that
25 recommendation, Your Honor.

1    THE COURT:  I agree, and I will reduce Ms. Sharp's

2  offense level by two to recognize her acceptance of

3  responsibility.

4    Do you also move for a one-level reduction in

5  Ms. Sharp's offense level to recognize her timely notification

6  of plea?

7    MR. WELDON:  The United States makes that motion.

8    THE COURT:  That motion is granted.

9    And has the victim been notified of this proceeding?

10    MR. WELDON:  Yes, they have been, Your Honor.

11    THE COURT:  Do they wish to have a representative

12  appear?

13    MR. WELDON:  No, Your Honor.

14    THE COURT:  Thank you, Mr. Weldon.

15    Mr. Gallardo, have you read the presentence report?

16    MR. GALLARDO:  Yes, I have, Your Honor.

17    THE COURT:  Have you discussed it with Ms. Sharp?

18    MR. GALLARDO:  Yes, I have.

19    THE COURT:  Do you have any objections?

20    MR. GALLARDO:  Just one objection, and that's

21  probably the same objection that you heard earlier this

22  afternoon for the adjustment for the role in the offense, under

23  Section 3(b)1.3.

24    THE COURT:  It is the same, and I am going to deny it

25  for the same reason that I think Ms. Sharp's actions at

1   least -- her position at least helped her conceal this scheme.

2   You can argue those issues under 3553(a).

3            MR. WELDON:  Your Honor, if I could please.

4            THE COURT:  Yes.

5            MR. WELDON:  I don't mean to interrupt the Court, but

6   I do have Government's Exhibits 1 through 5 for purposes of the

7   record, Your Honor.

8            THE COURT:  All right.  Any objection to the

9   admission of Exhibits 1 through 5, Mr. Gallardo?

10           MR. GALLARDO:  No, Your Honor.

11           THE COURT:  Those are admitted.

12      (Government's Exhibits 1, 2, 3, 4, and 5 admitted into

13         evidence.)

14           THE COURT:  I don't think you have any hesitation to

15   interrupt me, Mr. Weldon.

16           MR. WELDON:  I apologize, Your Honor.  Thank you.

17           THE COURT:  All right.  Ms. Sharp previously entered

18   a guilty plea to theft from an Indian tribal government,

19   Count 1; and wire fraud, Count 2; and I'll accept those pleas.

20           Mr. Gallardo, any other legal issues in which I need

21   to rule?

22           MR. GALLARDO:  No, Your Honor.

23           THE COURT:  Mr. Weldon?

24           MR. WELDON:  I agree, Your Honor.

25           THE COURT:  Any witnesses, Mr. Gallardo?

1          MR. GALLARDO:  No, Your Honor.

2          THE COURT:  Mr. Weldon?

3          MR. WELDON:  No, Your Honor.

4          THE COURT:  Are we going to hear from Mr. Grende at

5   all today?

6          MR. WELDON:  Not today, Your Honor.  Next time.

7          THE COURT:  All right.  I'll look forward to that.

8          Any motions, Mr. Weldon?

9          MR. WELDON:  No, Your Honor.

10          THE COURT:  I'll summarize the applicable punishments

11   faced by Ms. Sharp under the sentencing guidelines and the

12   statute.

13          Count 1 and Count 2 are grouped for guideline

14   calculations, due to the fact that the loss amount generally

15   dictates the offense level.  That's pursuant to sentence

16   guideline Section 3D1.2 (d).  The base offense level for wire

17   fraud is 7.  That level increases 10, since the loss amount is

18   more than $150,000 but less than $250,000.  The base offense

19   level increases 2 due to the fact that Ms. Sharp abused the

20   position of public and private trust to facilitate the

21   concealment of this offense.  The offense level decreases 2 in

22   light of my recognition of Ms. Sharp's acceptance of

23   responsibility.  The offense level decreases one more in light

24   of the government's motion to recognize Ms. Sharp's timely

25   notification of plea.  Those adjustments result in a total

1  offense level of 16, I believe.  Is that right?

2          MR. WELDON:  Correct, Your Honor.

3          THE COURT:  Yes.

4          Ms. Sharp has earned zero criminal history points.

5  That translates to a criminal history category of 1.

6          Under the guidelines, Ms. Sharp could receive a term

7  of imprisonment of 21 to 27 months, followed by a period of

8  supervised release of 1 to 3 years; a fine in the range of

9  $5,000 to $50,000; and she must pay a special assessment of

10 $100 per count.  And Ms. Sharp also has a restitution

11 obligation.  Ms. Sharp will not be eligible for probation under

12 the sentencing guidelines.

13         Is that right?  She's not eligible under the

14 guidelines?

15         MR. GALLARDO:  Yes, Your Honor.  She has the same

16 guideline range as the counterparts do.

17         THE COURT:  All right.  Then, under the statute, the

18 theft charge in Count 1, she faces a maximum of 10 years in

19 prison, followed by a period of supervised release of up to 3

20 years; a fine of up to $250,000; and a $100 special assessment.

21 She would be eligible for a term of probation of 1 to 5 years

22 under the statute.

23         On the wire fraud charge in Count 2, she faces a

24 maximum 20 years in prison, followed by up to 3 years of

25 supervised release; a fine of up to $250,000; and a $100

1  special assessment.  Ms. Sharp would be eligible for a term of

2  probation of 1 to 5 years on the wire fraud charge.

3           Mr. Gallardo, did I accurately state the possible

4  punishments faced by Ms. Sharp under the sentencing guidelines

5  and the applicable statute?

6           MR. GALLARDO:  Yes, Your Honor.

7           THE COURT:  Mr. Weldon, same question.

8           MR. WELDON:  I agree, Your Honor.

9           THE COURT:  Mr. Gallardo, if you and Ms. Sharp would

10  please approach the podium, I'll allow you to address the

11  Court.

12           Whenever you are ready, Mr. Gallardo.

13           MR. GALLARDO:  Thank you, Your Honor.

14           It's been somewhat of a somber mood in our defense

15  camp over here.  This case has been going on for quite a while.

16  It's probably no shock to the Court or anybody here that I can

17  say that Mrs. Sharp is a very, very pleasant woman, very

18  cooperative, a very easygoing client, and very willing to

19  accept responsibility for her actions and her actions alone.

20  It's been nice getting to know her and her family, learning her

21  story.  And I've been through a few of these sentencing

22  hearings in this case, as a spectator, and it's -- really, all

23  of these people, all of these defendants, are all very pleasant

24  individuals.  They are people with no criminal history, people

25  with various responsibilities in life, and who are just

struggling to get by in various ways.  And, you know, it's just
a shame all around that this happened this way.  Because,
individually, they are not the sort of people -- they are not
the sort of individuals that would take money that didn't
belong to them, especially an amount like this.  And that goes
for all of them, I think.

And so we just have a set of people who just
collectively went along with this, took some overtime pay that
they weren't entitled to.  Granted, there were some
individuals, including Mrs. Sharp, who legitimately did work
some overtime.  Not most of it.  Not most of it.

And there's no good -- there's no good reason for it,
Your Honor.  There isn't.  There isn't.  Mrs. Sharp has some
grandchildren that she's raising, some who have special needs,
some who have separation anxiety.  Mrs. Sharp has a daughter
who is struggling with substance and is battling that.  So
Mrs. Sharp's daughter, I guess, left her children with
Mrs. Sharp and her husband, Willie Sharp.  And so Mrs. Sharp is
tasked with taking care of these children, these grandchildren.

And Mrs. Sharp never expected that she would be here.
From early on in this case, she said she's just going to come
here and throw herself at the mercy of the Court, and that's
what she's doing.  That's what she's doing.

I know that some other people in this case got just
probationary sentences.  The last individual received nine

1    months.  Everybody in this case knew what was going on.

2    Everybody knew what was going on.  Pat, Theresa Calf Boss Ribs,

3    and Denise Sharp are the last ones here.  They were indicted

4    through a superseding indictment.  So there are some earlier

5    folks who just got started on this case earlier.  And because,

6    I think, their knowledge of what was going on wasn't fully

7    known at the time, their guideline ranges were a little lower

8    than what the last three were.  But they are similarly situated

9    with Mrs. Sharp.  Mrs. Sharp was in charge of personnel.  She

10   was a personnel manager, but she didn't manage anyone.  It's

11   more of an HR sort of deal.  And she was not in charge of time

12   cards or overseeing that program.  Not to my knowledge, and

13   I've looked over these documents quite a bit.  Quite a bit.

14          So, Your Honor, we just ask that you sentence

15   Mrs. Sharp to a probationary sentence like the first two

16   individuals, Mr. Goss and Ms. Bird.

17          THE COURT:  Thank you, Mr. Gallardo.

18          Ms. Sharp, you have a right to speak.

19    (Off-the-record discussion between Mr. Gallardo and the

20      defendant.)

21          THE DEFENDANT:  My name is Denise L. Sharp, and I

22   come today to throw myself at the mercy of the Court.  Based on

23   my age, my handicap, and of raising three grandchildren who

24   are -- you know, I didn't know my daughter was into drug

25   activity this long, but each of her children were damaged

1   through drugs.  And the latest one, I took her when she was

2   three months old.  And they were in such tough shape

3   physically, mentally -- and I don't even know the ramifications

4   of what has happened to them while they were in the care of

5   their mother, who is still recovering at Brendan House in

6   Kalispell.

7          And I throw myself at the mercy of the Court to house

8   arrest.  You know, I have no one to take care of them.  I do

9   have an 80-year-old mother, who I sometimes help to take care

10  of, and she doesn't live too far from me, maybe about from here

11  to where you are sitting, with the house.  And my father died.

12  So she basically lives by herself, and she cannot take care of

13  my 7-year-old and my 11-year-old.

14         I did already provide some money towards my

15  restitution in the form of my annual leave, which they didn't

16  give me a copy of my pay stub stuck to it, which I believe is

17  in the range of maybe $6,000 to $7,000.  And all I'm saying is

18  that I'm sorry.  I've never done anything ever wrong in my

19  life.  And I apologize to the Blackfeet tribe, the children, to

20  the people.  I apologize to the Court.  And I will never, you

21  know, do this ever again.

22         THE COURT:  Thank you, Ms. Sharp.  I appreciate your

23  comments.

24         Anything else, Mr. Gallardo?

25         MR. GALLARDO:  Your Honor, Mrs. Sharp just whispered

1  to me if she could show pictures of her grandchildren.

2          THE COURT:  Go ahead.

3          THE DEFENDANT:  This is my daughter.  That's my only

4  daughter.  And I do have two sons.  They don't have children.

5  She gave me eight children, eight grandchildren.  The little

6  boy that was sitting in back with Pat's sister, he was dying.

7  And I was told to come up to Kalispell because he wasn't going

8  to make it because he was born with drugs from my daughter.  I

9  couldn't go up there.  I couldn't take care of the rest of her

10 children.

11         My second grandson is in Dillon at that camp down

12 there because he can't deal with what his mom's done.  And he

13 will be graduating in June, and we're just trying to get our

14 lives back into order.

15         And my little girl has -- my little girl has

16 separation anxiety.  I can't even go into town and she's

17 crying, thinking she's going to get left because she was left

18 by her mother, and now I'm her mother.

19         This little boy was born deaf.  He has hearing aids,

20 and he's reading.  He read to me last night.  And now he just

21 completed basketball, and he's in golf.  He's playing golf

22 right now.

23         And this is a special education classroom.  And my

24 granddaughter is in special education.

25         And I'm just sorry, and I'll do whatever I can

1   because I'm punished every day on the reservation.  I get

2   laughed at.  I get wrote about.  I get threatening calls.  I

3   just stay home.  And if I'm going to go anyplace, I call Paul

4   and tell him.  And I will pay the United States Government and

5   the children of the Blackfeet Head Start Program.  I will pay

6   them back.  That's all I have to say.

7         THE COURT:  Thank you, Ms. Sharp.

8         Mr. Gallardo, you and Ms. Sharp may be seated,

9   please.

10        Mr. Weldon.

11        MR. WELDON:  Yes, Your Honor, very briefly.  I know

12  the Court is familiar with the facts now.

13        I did want to let the Court know that the amount of

14  restitution is the same.  It's joint and several.  For

15  Ms. Sharp, the amount for forfeiture is $29,033.25, Your Honor.

16        THE COURT:  Tell me again.  29 thousand --

17        MR. WELDON:  -- -33.25, Your Honor.  And, again, that

18  is based on the United States extrapolating.  That's a finding

19  that the Court will have to make, that 75 percent of the

20  overtime was fraudulent, and then 25 percent had been worked.

21        THE COURT:  And the restitution 139- --

22        MR. WELDON:  -- -96.02, Your Honor.

23        THE COURT:  Thank you.

24        MR. WELDON:  Yes, Your Honor.

25        And, of course, the Court -- or the government is

1   getting those numbers for the forfeiture based on the numbers
2   that actually went into the bank accounts of the particular
3   defendants.

4           With Ms. Sharp, I did want to just outline briefly
5   for the Court -- if you look at paragraph 16 of Ms. Sharp's
6   PSR, the amount of overtime that was claimed was 1,172 hours of
7   overtime.  That resulted in about $38,711.  Ms. Sharp is
8   particularly interesting for this investigation because at the
9   same time period her husband was the chairman of the Blackfeet
10  tribe.  That provided them significant influence to make sure
11  that claims were able to go through so that the overtime could
12  be paid, Your Honor.  All of those factors considered, United
13  States is asking for a guideline sentence.  That would 21 to
14  27 months of imprisonment, Your Honor.

15          THE COURT:  Thank you, Mr. Weldon.

16          MR. WELDON:  Yes, Your Honor.

17          THE COURT:  I'll summarize the position of the
18  parties.  Under the guidelines, Ms. Sharp could receive a
19  sentence of 21 to 27 months, followed by 1 to 3 years of
20  supervised release.  Mr. Gallardo has requested a sentence of
21  probation, a significant downward variance.  He argues that
22  Ms. Sharp's lack of criminal history and her family obligations
23  warrant the downward variance.  Mr. Weldon has requested a
24  guideline sentence, followed by 3 years of supervised release.
25  He suggests the need for deterrence and the need to recognize

1   the position of trust held by Ms. Sharp and others warrants the

2   guideline sentence.

3          I've read and considered all of the information

4   provided to me, including the presentence report and the

5   statements of this hearing.  I've considered the statement from

6   Mr. Gallardo, Ms. Sharp, and Mr. Weldon.  I believe the

7   sentence imposed will protect the community, will reflect the

8   seriousness of this offense, will provide just punishment of

9   law, and will not be disparate to sentences of defendants

10  convicted of similar offenses.

11         Mr. Gallardo, if you and Ms. Sharp would please

12  approach the podium, I'm prepared to impose sentence.

13         In light of Ms. Sharp's lack of any criminal history,

14  her family obligations, and her need to support her children, I

15  will vary downward from the guideline range as calculated here.

16         It's the judgment of the Court that the defendant,

17  Denise L. Sharp, is hereby committed to the custody of the US

18  Bureau of Prisons for a period of 9 months.

19         Do you have a placement request, Mr. Gallardo?

20         MR. GALLARDO:  Phoenix.

21         THE COURT:  Pardon me?

22         MR. GALLARDO:  Phoenix.

23         THE COURT:  Phoenix, Arizona?

24         MR. GALLARDO:  Yeah.

25         THE COURT:  It is recommended that the Bureau of

1 Prisons house Ms. Sharp at its facility in Phoenix, Arizona, to

2 allow her to be as close to her family in Montana as possible.

3 Upon release from imprisonment, Ms. Sharp shall be

4 placed on supervised release for a period of two years.

5 Within 72 hours of release from the custody of Bureau

6 of Prisons, Ms. Sharp shall report in person to the probation

7 office in the district for which she's released.

8 While on supervised release, Ms. Sharp shall not

9 commit any federal, state, or local crime and shall not possess

10 a controlled substance.

11 Ms. Sharp shall be prohibited from owning, using, or

12 being in constructive possession of firearms, ammunition, or

13 other destructive devices while on supervision, and anytime

14 after the completion of the period of supervision, unless

15 granted relief by the Secretary of the Treasury.

16 Ms. Sharp shall cooperate in the collection of DNA,

17 as directed by the US Probation Office.

18 I'm willing to suspend any drug testing requirements

19 for Ms. Sharp as the record indicates no issues with substance

20 abuse.

21 Mr. Sharp also must comply with the standard

22 conditions of supervision as recommended by the US Sentencing

23 Commission that have been approved by this Court.

24 You also must comply with the following Special

25 Conditions:

1:  All employment must be approved in advance in
writing by the US Probation Office.  You shall consent to
third-party disclosure to any employer or potential employer.

2:  You must provide the US Probation Office with any
requested financial information.  You shall incur no new lines
of credit without prior approval of the US Probation Office.
You must notify the probation office of any material changes in
your economic circumstances that might affect your ability to
pay restitution, fines, or special assessments.

3:  You shall apply all moneys received from income
tax refunds, lottery winnings, judgments, and/or any other
anticipated or unexpected financial gains to the outstanding
court-ordered financial obligation.

4:  While on supervision, you must fulfill all tax
obligations in adherence to Internal Revenue Service
requirements.

5:  You shall not engage in any gambling or wagering
activity of any kind, whether online, over the phone, or in
person.  You shall not enter any casino or other place of
business where gambling is the primary service offered.

6:  You shall submit your person, residence,
vehicles, and papers to a search with or without a warrant by
any probation officer based on reasonable suspicion of
contraband or evidence in violation of a condition of release.
Your failure to submit to search may be grounds for revocation.

1  You shall warn any other occupants that the premises in which
2  you are living may be subject to searches pursuant to this
3  condition.  You shall also allow seizure of suspected
4  contraband for further examination.

5          7:  You shall pay restitution in the amount of
6  $139,096.02.  You shall make payments at a rate as directed by
7  the US Probation Office.  Your restitution obligation shall be
8  entered jointly and severally with any additional defendants
9  who are determined to be liable.  Payments shall be made to the
10 clerk, United States District Court, Missouri River Courthouse,
11 125 Central Avenue West, Suite 110, Great Falls, Montana 59404,
12 and shall be disbursed to:  Blackfeet Head Start, Post Office
13 Box 528, Browning, Montana 59417.

14         I neglected to clarify that the 9-month sentence on
15 each count are to run concurrently.  That goes for all of the
16 judgments today.

17         The Court finds Ms. Sharp lacks the ability to pay a
18 fine and hereby waives the fine.

19         It is further ordered that Ms. Sharp shall pay the
20 United States a special assessment of $100 per count for a
21 total of $200, which shall be due immediately.

22         It is ordered that interest be waived pursuant to
23 Title 18, United States Code, Section 3612 (f)(3)(A).

24         The Court further finds Ms. Sharp must forfeit
25 $29,333.25, which reflects 75 percent of the ill-gotten

1  overtime payment.

2          While incarcerated, criminal monetary penalty
3  payments are due at the rate of not less than $25 per quarter.
4  Payment shall be through the Bureau of Prisons' Inmate
5  Financial Responsibility Program.  Criminal monetary payments
6  shall be made to the clerk, United States District Court,
7  Missouri River Courthouse, 125 Central Avenue West, Suite 110,
8  Great Falls, Montana 59404.

9          Ms. Sharp, you have a right to appeal your sentence.
10  If you wish to appeal, you must file a written notice of appeal
11  with the clerk of this court within 14 days from today's date.
12  If you fail to file an appeal within 14 days, your appeal could
13  be dismissed as untimely.

14          Do you understand?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  Any legal objections to the sentence,
17  Mr. Gallardo?

18          MR. GALLARDO:  No, Your Honor.

19          THE COURT:  Mr. Weldon?

20          MR. WELDON:  No, Your Honor.

21          The only thing I wanted to make sure I clarified for
22  the Court is that the forfeiture amount, I think, was
23  $29,033.25.

24          THE COURT:  I said $333.  Okay.  $29,033.25.  Excuse
25  me.

1          MR. WELDON:  Yes, Your Honor.  Thank you.

2          THE COURT:  All right.  Thank you, Mr. Weldon.

3          Mr. Gallardo, does Ms. Sharp wish to self-report?

4          MR. GALLARDO:  Yes, Your Honor.

5          THE COURT:  All right.  Ms. Sharp, I will allow you

6   to self-report.  You have had no problems of any kind on

7   pretrial release.  You have to get yourself to that facility as

8   directed by the US Bureau of Prisons.

9          And Mr. Riley is in the back, Mr. Gallardo.  Please

10  meet with him briefly to make arrangements for self-reporting.

11         All right.  Anything else to address today?

12         MR. WELDON:  No, Your Honor.

13         MR. GALLARDO:  No, Your Honor.

14         THE COURT:  All right.  Thank you, Counsel.  Thank

15  you to court staff for the long day here.  We can finally go

16  home.

17         Ms. Sharp, I hope we never see you again.  I hope you

18  get through this.  Get back to your family.  They need you.  I

19  wish you good luck.

20         We'll be in recess.  Thank you.

21         MR. WELDON:  Thank you, Your Honor.

22     (The proceedings concluded at 5:05 p.m.)

23

24              --o0o--

25

1                           REPORTER'S CERTIFICATE

2          I, Yvette Heinze, a Registered Professional

3    Reporter and Certified Shorthand Reporter, certify that the

4    foregoing transcript is a true and correct record of the

5    proceedings given at the time and place hereinbefore mentioned;

6    that the proceedings were reported by me in machine shorthand

7    and thereafter reduced to typewriting using computer-assisted

8    transcription; that after being reduced to typewriting, a

9    certified copy of this transcript will be filed electronically

10   with the Court.

11         I further certify that I am not attorney for, nor employed

12   by, nor related to any of the parties or attorneys to this

13   action, nor financially interested in this action.

14         IN WITNESS WHEREOF, I have set my hand at Great Falls,

15   Montana, this 16th day of May, 2019.

16

17                          /s/ *Yvette Heinze*

18                          _____
                            Yvette Heinze
19                          United States Court Reporter

20

21

22

23

24

25